UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ROBERT MASON,

Defendant.

---

21 Cr. 499 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a counseled motion for compassionate release by defendant Robert Mason pursuant to 18 U.S.C. § 3582(c)(1). For the reasons that follow, the Court denies the motion.

I. **Background**

The background to this case is set out in detail in materials including Mason's October 12, 2022 presentence report, Dkt. 229 ("PSR"), the transcript of Mason's November 15, 2022, sentencing, Dkt. 353 ("Sent. Tr"), Mason's memorandum in support of his compassionate release motion, Dkt. 349 ("D. Mem."), the Government's memorandum in opposition to that motion, Dkt. 351 ("G. Mem."), and the transcript of the October 2022 trial of Mason's co-defendant, Davon Mial, see Dkts. 269–77.

In brief, on August 5, 2021, a grand jury returned Indictment 21 Cr. 499 (PAE). It charged Mason and seven others in one count, with participating in a conspiracy to distribute, and to possess with intent to distribute, 280 grams and more of crack cocaine, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(A). The charges arose from a 21-months-long scheme in which Mason and his co-defendants had made numerous sales of crack cocaine in the Times Square area of midtown Manhattan, including to undercover detectives.

Seven of the eight defendants pled guilty, in each instance to lesser included offenses within the scope of the Indictment. On July 21, 2022, Mason pled guilty, pursuant to a plea agreement, to conspiring to distribute and possess with intent to distribute 28 grams and more of crack cocaine, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(B). *See* Dkt. 195 (transcript of plea proceeding); Dkt. 264 (judgment). As detailed in the PSR, Mason and his co-defendants sold crack on nearly a 24-hour basis, with one "shift" arriving in the late morning and conducting sales until the late afternoon, when another "shift" would arrive and conduct sales through the early morning. *See generally* PSR ¶¶ 14–23. In the plea agreement, Mason acknowledged responsibility for approximately 2,320.7 grams of crack cocaine. That figure was based on crack quantities that (1) he or co-conspirators had sold to undercover officers during his participation in the conspiracy and (2) were seized from co-conspirators during the conspiracy. *Id.* ¶ 23.

Sentencing was held November 15, 2022. The Court, consistent with the plea agreement and the PSR, found Mason's offense level to be 29, his criminal history category to be V, and the guideline range to be 140 to 175 months' imprisonment. *See* Sent. Tr. at 6. The Court sentenced Mason to the mandatory minimum term of 60 months' (five years) imprisonment, as advocated by the defense, below the 84-month sentence recommended by the Probation Department. *See* Sent. Tr. at 39; PSR at 27.[1] At Mason's sentencing, as at those of his co-defendants, the Court endeavored to impose a sentence that, all relevant factors considered, situated his sentence in proper relation to those of his co-conspirators. *See* Sent. Tr. at 37–39.

On January 17, 2025, President Biden issued executive grants of clemency to 2,500 non-violent offenders, including many federal narcotics defendants. Relevant here, these commuted

---

[1] The Government had recommended a sentence below the Guidelines range. *See* Dkt. 259 at 1.

the sentences of four of Mason's co-defendants, including two who had received longer sentences than he. G. Mem. at 3–4. Mason's sentence was not commuted. *Id.*

On March 25, 2025, Mason moved for a reduction of sentence under 18 U.S.C. § 3582(c), largely based on the commutations of his co-defendants' sentences, and also based on his medical condition. *See* Dkt. 349. On April 10, 2025, the Government filed an opposition. Dkt. 351. On April 13, 2025, Mason filed a reply. Dkt. 352 ("D. Reply").

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 9 Cr. 705, 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

3

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," *see* U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

4

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

5

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. *Id.* § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

**B.  Discussion**

Mason makes two arguments why extraordinary and compelling circumstances support his early release under § 3582(c)(1)(A). First, he argues, such is necessary to restore equitable treatment among the defendants in this case, given President Biden's commutation of the sentences of four co-defendants. Second, he argues, such is merited in light of his cardiovascular conditions. The Government opposes the motion. It argues that a presidential grant of clemency to co-defendants is not a proper basis for relief under § 3582. And it argues, although Mason's medical conditions require surgery and rehabilitative care, the BOP is equipped to attend to his needs and is doing so. The Government separately argues that, even if extraordinary and compelling circumstances were found, the § 3553(a) factors support the sentence imposed.[2]

---

[2] The Government does not dispute that Mason has exhausted his administrative remedies to the extent he seeks relief based on President Biden's commutations. Mason filed an administrative petition on this basis with the warden of FCI Allenwood Low on January 29, 2025; the next day, the warden denied his request. G. Mem. at 4. The Government disputes that Mason exhausted his administrative remedies to the extent he relies on his medical conditions. *See id.* at 7 n.3. Because the Court denies Mason's petition on other grounds, it does not resolve here the Government's objection to relief on this ground.

6

### 1. Extraordinary and Compelling Circumstances

***Commutation of sentences of four co-defendants***: Mason notes that President Biden's commutations reduced the sentences of four of his co-defendants, including two for whom the Court had imposed sentences above his 60-month sentence: Johnny Perez (96 months) and Aaron Starks (72 months). Given the commutations, he notes, he stands to serve more time in prison than these defendants. Mason argues that, had the Court known of these commutations at the time it set his sentence, it would have imposed a lower sentence, in the interest of assuring compatibility with the sentences of co-defendants. Invoking the catch-all provision of the Sentencing Guidelines' compassionate release guidance, U.S.S.G. § 1B1.13(b)(5), Mason argues that a grant of early release is warranted to avoid the inversion in which defendants whom the Court viewed as meriting longer sentences serve less time than he. D. Mem. at 2–3.

For several reasons, the President's commutations of the sentences of several of Mason's co-defendants does not qualify as an extraordinary and compelling circumstances justifying a reduction in his sentence.

First, as a matter of constitutional principle, it is not for this Court to probe behind that Executive Branch decision. It is unclear on what basis the President granted clemency to some, but not all, defendants in this case. There may or may not have been a factual basis on which to differentiate among these persons. But clemency is a power entrusted solely to the Executive. *Cavazos v. Smith*, 565 U.S. 1, 8–9 (2011). "It is not for the Judicial Branch to determine the standards for this discretion. If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention." *Id.* at 9; *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284 (1998) ("Clemency proceedings . . . . are conducted

7

by the executive branch, independent of direct appeal and collateral relief proceedings. . . . [a]nd clemency has not traditionally 'been the business of courts.'" (citation omitted)).

Second, § 1B1.13(b)(5)'s text does not authorize relief based on the commutations of the sentences of other persons. District courts have broad discretion to determine whether particular circumstances supply extraordinary and compelling reasons for compassionate release, *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022), but to justify a sentence reduction under the catch-all provision, the circumstances must be "similar in gravity" to those specified in § 1B1.13(b)(1)–(4). As defined, however, those four provisions all involve newly arisen mitigating facts *particular to the defendant in question*. They involve medical circumstances, age, family circumstances, and abuse in custody. In contrast, the grants of clemency to four of Mason's co-defendants do not say anything *about Mason*. They do not speak to—or bespeak an alteration of—his circumstances. For this reason, a grant of clemency to other person(s) is not a development of "similar gravity" to those specified. And courts considering like applications have generally held that the commutations of others' sentences do not merit compassionate release under § 3582. *See, e.g., United States v. Askew*, 736 F. App'x 781, 785 (11th Cir. 2018) (affirming denial of defendant's § 3585(c)(2) motion, notwithstanding commutation of co-defendant's sentence); *United States v. McDonald*, No. 94 Cr. 20256, 2020 WL 3166741, at *8 (W.D. Tenn. June 8, 2020) ("Granting a motion for compassionate release is not comparable to a Presidential commutation. The disparate sentences in McDonald's case, and his co-defendant's receipt of a Presidential commutation are not extraordinary and compelling reasons for compassionate release."); *United States v. Wettstain*, No. 7 Cr. 10, 2017 WL 9098063, at *2 (W.D. Ky. May 2, 2017) (denying defendant's motion for sentence reduction, noting that "President Obama's commutation of Defendant's sentence is an executive action that does not

affect his eligibility for § 3582 relief."); *United States v. Gibson*, No. 94 Cr. 454, 2017 WL 1301514, at *1 (D. Md. Apr. 7, 2017) (same), *aff'd*, 694 F. App'x 170 (4th Cir. 2017). *But see United States v. Montgomery*, No. 18 Cr. 77, 2021 WL 1857339, at *3 (M.D. Tenn. May 10, 2021) (finding commutation given to one defendant and not the other "constitute[d] extraordinary and compelling reasons for a sentence reduction").

Third, the policy justification articulated by President Biden for commuting the sentences of certain crack offenders would not support reducing Mason's sentence. The President noted that, historically, there have been disparities among the sentences imposed on non-violent drug offenders depending on whether they had distributed (or conspired to distribute) crack versus powder cocaine. "Statement from President Joe Biden on Additional Clemency Actions," Jan. 17, 2025, *available at* https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2025/01/17/statement-from-president-joe-biden-on-additional-clemency-actions [https://perma.cc/42BF-TNCY]. Closing the gap between crack and powder cocaine, he stated, was a basis for the January 2025 commutations. *Id.*

But, as the transcript of Mason's November 15, 2022 sentencing hearing reflects, the Court fully took that consideration into account in imposing sentence. The Court noted that the federal Sentencing Guidelines had not fully closed the gap in the treatment of crack versus cocaine offenses. Sent. Tr. at 6, 37. The Court noted, however, that the Equal Act, then pending congressional enactment, stood to eliminate this disparity, and was likely to apply retroactively.

*Id.*[3] The Court thus, with the support of the Government, Dkt. 259,[4] varied downward at Mason's sentencing to eliminate that disparity, stating:

> In light of the pending Equal Act, I think it is likely that a court could lawfully depart[] downward within the framework of the guidelines based on that legislation to assure that powder and crack cocaine are treated more symmetrically. Nonetheless, because I have the authority to vary below the guideline range, and because the methodology of a variance is more flexible, I will elect not to exercise what authority I may have to downward depart; instead, I will take account of the powder versus crack cocaine disparity in fashioning a downward variance, which all parties agree is appropriate.

Sent. Tr. at 6.

The Court accordingly denies Mason's motion for compassionate release to the extent it is based on President Biden's grant of clemency to several of his co-defendants.

***Medical conditions***: Mason alternatively argues that his medical conditions, involving cardiovascular and heart conditions, supply an extraordinary and compelling reason to reduce his sentence.

That is wrong. As the Government explains, Mason's records reflect medical issues that the BOP can capably address, *see* G. Mem. at 7–9, such that the Court cannot find that Mason is "suffering from a medical condition that requires long-term or specialized medical care" that is

---

[3] Although the Equal Act was ultimately not enacted, *see* EQUAL Act of 2021, H.R. 1693 117th Cong. (2021), courts in this District "considered and applied the EQUAL Act's proposed adjustments to defendants at sentencings despite Congress having yet to enact the Act," *United States v. Sims*, No. 19 Cr. 857, 2022 WL 3013111, at *4 (S.D.N.Y. July 29, 2022); *see also United States v. Lopez*, No. 16 CR. 317-22 (PAE), 2024 WL 964593, at *1 (S.D.N.Y. Mar. 5, 2024) ("The Court declined to give effect to the EQUAL Act, as this legislation was not yet law, while noting that, were the statute enacted, it might 'eventually provide a separate source of support for a sentence reduction in this case.'"); EQUAL Act, H.R. 1062 118th Con. (2023).

[4] The Government stated that, had the powder cocaine Guidelines been applied to the same amount of cocaine base, "the base offense level would be 26, and the Guidelines sentencing range would be 84 to 105 months' imprisonment," below the range of 140 to 175 months yielded by the crack cocaine Guidelines. *Id.* It urged the Court to "consider the powder-to-cocaine base disparity in assessing the Section 3553(a) factors." *Id.*

not being provided in prison and without which the defendant is at risk of serious health deterioration or death, U.S.S.G. § 1B1.13(b)(1)(C). Mason, in fact, acknowledges that, while in BOP custody, he has received cardiac treatment at the University of Pittsburgh Medical Center, a "high rated facility for heart surgery" to which he was transported after his cardiologist recommended a cardiac catheterization. D. Mem. at 6. He also acknowledges that doctors secured by the BOP have otherwise provided him with appropriate medical care, including medication management, a cardiology consultation, various health tests, and a scheduled, upcoming surgery. *Id.* Indeed, while this motion was pending, Mason continued to receive medical care. On June 18, 2025, he is scheduled to receive a follow-up cardiology consultation. *See* Letter from Sam A. Schmidt (May 7, 2025).[5] Notably, too, Mason requested to remain in custody while this motion was pending to secure his continued cardiovascular treatment, a request that bespeaks at least some level of comfort with his ongoing course of care. *See* Def. Reply at 2 ("[I]t [i]s more likely that Mr. Mason would receive the surgery quicker if he remained in custody tha[n] awaiting this Court's decision and trying to schedule surgery if released.").

The Court, of course, is sympathetic to Mason's medical concerns. But, measured against the case law applying § 3582(c) to release applications based on medical needs, his circumstances fall short of supporting a reduction in sentence. *See, e.g., United States v. Pouryan*, No. 11 Cr. 111, 2023 WL 2456503, at *2 (S.D.N.Y. Mar. 9, 2023) (although defendant "does suffer from many of his alleged medical conditions," his medical records "establish that he has received regular treatment and care for those conditions," and thus he "has not demonstrated

---

[5] To the extent that Mason then or otherwise receives new information concerning his medical condition which he believes would support compassionate release, he, of course, will be at liberty to make a renewed motion for release.

11

that the BOP cannot adequately address his medical needs" (citation omitted)); *United States v. Lawrence*, No. 19 Cr. 437, 2022 WL 4000904, at *4 (S.D.N.Y. Sept. 1, 2022) (denying sentence reduction where defendant "has not demonstrated that the BOP cannot adequately address his medical needs"); *United States v. Lora*, No. 16 Cr. 44, 2022 WL 1055749, at *4 (S.D.N.Y. Apr. 8, 2022) (similar); *United States v. Mood*, No. 19 Cr. 113, 2021 WL 242482, at *1 (S.D.N.Y. Jan. 25, 2021) (similar); *United States v. Zubkov*, 460 F. Supp. 3d 450, 455 (S.D.N.Y. 2020) (similar); *United States v. Brady*, No. 18 Cr. 316, 2020 WL 2512100, at *3–4 (S.D.N.Y. May 15, 2020) (similar).

The Court therefore denies Mason's motion for compassionate release to the extent based on Mason's medical needs.

### 2.    § 3553(a) Factors

Even assuming the new information on which Mason relies—the commutation of the sentences of several of his co-defendants and his medical needs—separately or together supplied a legally adequate basis for early release, the Court would still deny the application. That is because the § 3553(a) factors, in combination, continue to favor the sentence imposed.

At sentencing in November 2022, the Court was obliged by statute to impose a sentence of at least 60 months' imprisonment. But the Court also explicitly stated that the § 3553(a) factors warranted that sentence. There was a weighty interest in just punishment:

> [D]istribution of crack on such a scale, or even anything close, is deadly serious for obvious reasons. Crack cocaine is highly addictive. It can produce highly irregular and irrational behavior among those under its influence. It can destroy lives, jobs, families, and communities. It can promote addiction to it. Sometimes it can lead to the use and abuse of other illegal drugs. It causes hopelessness and homelessness. . . . [I]t's certainly safe to say that you did a lot of people a lot of harm, and for no reason other than to make money for yourself, apparently, perhaps, to feed your own habit, perhaps to feed your family, but it was, ultimately, a money-making enterprise.

12

Sent Tr. at 30–31.

And the related interests in specific deterrence and protection of the public favored a 60-month sentence, particularly because Mason had been undeterred by his prior sentences, including a 50-month sentence for a crack offense:

> You've been brought up on criminal charges a very large number of times. Mostly, but not entirely, they involve narcotics. You have seven prior criminal convictions—again, mostly involving narcotics. Among those, you were convicted in 2001 twice for narcotics offenses, for which you were sentenced respectively to probation and to 45 days' imprisonment; in 2003, for a crack offense, for which you were sentenced to time served, which amounted to 50 months', 5-0 months, imprisonment; and 2014, for another crack offense, for which you were sentenced to 18 months' imprisonment. The presentence report also reflects an offense of driving while intoxicated. And it reflects a large number of arrests not resulting in convictions, including for non[-]narcotics offenses. It also reflects that you've committed offenses, including drug dealing, sometimes while on post-conviction release, whether called probation or supervised release or parole. . . .
>
> All of that history is significant for this reason: I don't know precisely what the judges in the prior cases that you've had were thinking, but I have to believe that in the main, they hoped that the prosecution of you, your conviction, and the sentences in those cases would get a message across to you, a message had to be stop selling drugs and stop committing other crimes. In each case, however, that message didn't register with you. You kept on committing crimes, leading, ultimately, up to this case.
>
> It's also concerning to me that you committed this crime in your late 30s. On January 2, you'll turn age 41. Many defendants commit crimes in their late teens and early twenties, and their lawyers rightly tell me that the defendant was young, and he was immature, and he was under the influence of older men when he committed the crime, but he is still growing and maturing. That argument is not as much available to you. You committed this crime largely in your age 38 year and as the father, I might add, of two children. It follows that a much more loud and clear message needs to be sent to you this time.
>
> The prison sentence I impose in this case rightly should be longer than any prison sentence you've served. And it will be, it has to be, insofar as the longest sentence you previously served is for 50 months, and the mandatory minimum sentence here is for 60. Th[is] sentence . . . is intended to get the message to you not to commit future crimes.

*Id.* at 30–33. The Court thus concluded that "the sentence I'm about to pronounce is the lowest it can be consistent with all of the factors I'm required to consider." *Id.* at 39.

The Court stands by that assessment today. A 60-month sentence was and is warranted for Mason. That is not changed by the grant of clemency to others, or by Mason's current medical needs.

The Court accordingly denies Mason's motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see, e.g.*, *United States v. Del Rosario*, No. 12 Cr. 81 (PAE), 2024 WL 5054912, at *6–7 (S.D.N.Y. Dec. 10, 2024) (§ 3553(a) factors, considered "in combination," disfavored early release); *United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (similar); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

## CONCLUSION

For the reasons stated, the Court denies Mason's motion for a reduction of sentence. The Court's ruling is without prejudice to Mason's right to move anew under § 3582(c) for early release based on material, new medical developments.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 349.

SO ORDERED.

*Paul A. Engelmayer* (signature)

PAUL A. ENGELMAYER
United States District Judge

Dated: May 15, 2025
New York, New York